## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WORLD WIDE REGISTRATION SYSTEMS, INC. d/b/a EXPO LOGIC,<br><br>           Plaintiff,<br><br>     v.<br><br>ASIS INTERNATIONAL, INC.,<br><br>           Defendant. | CIVIL ACTION<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff World Wide Registration Systems, Inc. d/b/a Expo Logic ("Expo Logic"), by and through its undersigned counsel, hereby files this Complaint against Defendant ASIS International, Inc. ("ASIS"), and in support thereof avers as follows:

### THE PARTIES

1.      Plaintiff Expo Logic is a business organization incorporated under the laws of Pennsylvania. It maintains its principal place of business at 553 Foundry Road, East Norriton, Pennsylvania 19403.

2.      Defendant is an international trade organization incorporated under the laws of Delaware. It maintains its principal place of business at 1625 Prince Street, Alexandria, Virginia 22314.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  This is an action between parties of diverse citizenship with an amount in controversy

(to the extent measured and calculable by monetary damages) that exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because a substantial part of the events or omissions giving rise to Expo Logic's claims occurred in this District.

5.      The Court may exercise personal jurisdiction over Defendant because, as described in more detail below, the dispute giving rise to this lawsuit arose out of and relates to Defendant's contacts with Pennsylvania.

## BACKGROUND

6.      On July 14, 2015, ASIS and Event Planning International Corporation ("EPIC") entered into a service contract (the "Contract"). A true and correct copy of the Contract is appended to the Complaint as Exhibit A.

7.      In or about December 2015, EPIC was sold to Expo Logic. In connection with the sale, EPIC assigned the Contract to Expo Logic. A true and correct copy of an assignment agreement between Expo Logic is appended to the Complaint as Exhibit B.

8.      ASIS consented to the assignment of the Contract and agreed that the Contract would "continue in full force and effect," with Expo Logic to assume EPIC's rights and obligations under the Contract as if it were the counterparty to the Contract. *See id.*

9.      Pursuant to the Contract, ASIS agreed to use Expo Logic to provide pre-registration and on-site registration services from 2015 through 2020 at ASIS's International Seminar and Exhibits, annual trade shows hosted by ASIS.

10.     These pre-registration and on-site registration services assist attendees and exhibitors with event registration and allow ASIS to track attendees and exhibitors who register for its events.

11.     Pursuant to the Contract, Expo Logic also provides lead retrieval services to the exhibitors who participate at the annual trade shows. *See* Exhibit A at 2, 5.

12.     According to the Contract, from 2015 through 2020, "[Expo Logic] will be the official, exclusive and authorized supplier of lead retrieval services for ASIS and rent to ASIS Exhibitors Lead Retrieval Scanners and an App capable of decoding PDF417 bar codes or other approved methods of data encoding and included on each registrant's credential." *Id.* at 5.

13.     Exhibitors pay Expo Logic directly for lead retrieval services, which allow exhibitors to record and follow up on sales leads they generate at events. These services can help the exhibitors develop business and, thus, are valuable to the exhibitors.

14.     ASIS knows that these lead retrieval services are a lucrative component of the Contract for Expo Logic. Expo Logic has, on some occasions, earned over $200,000 in lead retrieval fees per show.

15.     ASIS is obligated to pay Expo Logic directly for registration services and, for some shows, ASIS has paid Expo Logic over $70,000 in registration fees.

16.     Given the relationship established by the Contract, Expo Logic also provides pre-registration, on-site registration, and lead retrieval services at other trade shows hosted by ASIS, in addition to the annual Seminar and Exhibits. Expo Logic earns significant revenue in registration and lead retrieval fees from these events.

17.     In connection with the registration and lead retrieval services Expo Logic provides to ASIS and ASIS trade show exhibitors, Expo Logic created a custom digital platform

for ASIS through which ASIS's exhibitors could register for the trade shows and monitor and record any sales leads they made at the shows.

18.     The digital platform Expo Logic created for ASIS saves ASIS thousands of man-hours at each event and otherwise contributes to the events' success, according to the ASIS staff. Using this platform, ASIS can reduce its labor costs associated with event registration. The custom digital platform can also be reused at future events.

19.     At all times relevant to the Contract, and for all relevant purposes of the 2015, 2016, and 2017 annual trade shows contemplated by the Contract, Expo Logic performed all of its obligations under the Contract.

20.     Furthermore, Expo Logic received only positive feedback from ASIS and the exhibitors at these events.

21.     Expo Logic was able to achieve success at these events in part because of its exceptional customer service and because it performed significant testing on its registration systems and software before each event.

22.     To prepare for the trade shows, Expo Logic also hosted weekly videoconferences with ASIS from its Pennsylvania office. These conferences typically lasted between 10 minutes and an hour and multiple individuals from both organizations participated in the conferences.

23.     Expo Logic and ASIS also maintained daily written communications to prepare for the trade shows, in addition to occasional telephone calls. Usually, Expo Logic received and otherwise addressed these communications in its Pennsylvania office.

24.     Expo Logic sent invoices to ASIS for services rendered pursuant to the Contract. ASIS sent payment for these invoices via mail to Expo Logic in Pennsylvania.

25.     Pursuant to the Contract's early termination provision, ASIS is permitted to terminate the agreement only if "it reasonably becomes convinced that [Expo Logic] will not be able substantially to perform its obligations under this agreement." *See* Exhibit A at 7.

26.     Assuming Expo Logic is able to substantially perform its obligations, which it is, the term of the Contract runs through 2020 and ASIS is obligated to use Expo Logic's registration services at the 2018, 2019, and 2020 ASIS International Seminar and Exhibits.

27.     Despite the positive customer feedback Expo Logic received for the various ASIS events, ASIS now seeks to terminate the Contract under the early termination provision.

28.     On October 18, 2017, ASIS's vice president of events and business development unexpectedly called Expo Logic's president in Pennsylvania to notify him that ASIS was terminating the Contract.

29.     Later that day, ASIS's vice president of events and business development sent Expo Logic's president a letter via email. The letter informed Expo Logic that ASIS was terminating the Contract immediately. A true and correct copy of the letter, dated October 17, 2017, is appended to the Complaint as Exhibit C.

30.     According to the letter, ASIS concluded that Expo Logic would not be able substantially to perform its obligations under the Contract because of various alleged security and customer service concerns. But the Contract contains no provisions relating to either the customer service issues or security standards ASIS raises in its letter.

31.     Among these concerns was a security test Expo Logic ran on its registration system before ASIS's 2017 Seminar and Exhibits. According to ASIS's October 17, 2017 letter, the system initially failed the security test. Yet, the purpose of pre-event testing is specifically to identify and address problems so they do not arise during the event itself. This is precisely why

5

such tests are done before the event begins. In this case, as soon as Expo Logic became aware of those problems, it corrected them in a timely and professional manner before the event ever began.

32.     Strangely, ASIS never before raised these issues with Expo Logic. The October 17 letter was the first time Expo Logic became aware of these alleged concerns.

33.     Regardless, the pre-textual concerns ASIS raised in its letter are illegitimate and have no basis in fact, and there is no reason to conclude that Expo Logic could not continue to substantially perform all of its obligations under the Contract, as it has since 2015.

34.     Separately, the Contract identifies dozens of Expo Logic's obligations and responsibilities in connection with the trade shows. However, in its October 17, 2017 letter, ASIS does not identify a single obligation under the Contract that Expo Logic allegedly failed to perform.

35.     Accordingly, ASIS has no basis on which to terminate the Contract early.

36.     Upon information and belief, ASIS knows that it is bound by the Contract through 2020 and is only now manufacturing alleged "issues" with Expo Logic's services as a pretext to get out of the Contract early.

37.     Upon information and belief, ASIS was recently sold and/or underwent a change in leadership and, rather than having any legitimate concerns with Expo Logic's services, ASIS is terminating multiple business relationships, including that with Expo Logic, solely out of personal preference. To advance those preferences in Expo Logic's case, ASIS is fabricating reasons to avail itself of the early termination provision in the Contract.

38.     Under the Contract, ASIS and Expo Logic are obligated to pursue mediation before availing themselves of the courts in the event a dispute arises in connection with the Contract. *See* Exhibit A at 7.

39.     In an effort to comply with the Contract and otherwise avoid litigation, counsel for Expo Logic sent ASIS a letter on November 3, 2017. A true and correct copy of the letter is appended to the Complaint as Exhibit D.

40.     In that letter, counsel for Expo Logic explained that there was no basis on which to terminate the Contract and suggested that the parties pursue mediation if ASIS insisted on terminating the Contract.

41.     ASIS has not responded to Expo Logic's request for mediation.

42.     Instead, on November 13, 2017, counsel for ASIS responded to Expo Logic's November 3 letter. A true and correct copy of the November 13 letter is appended to the Complaint as Exhibit E.

43.     In this letter, counsel for ASIS merely reiterated the fabricated concerns ASIS raised in its October 17 letter and still failed to articulate any reason justifying early termination of the Contract.

44.     Also in that letter, counsel for ASIS informed counsel for Expo Logic that for the same reasons as those in the October 17 letter, ASIS was now disputing Expo Logic's November 2, 2017 invoice for over $66,733.36 in services provided in connection with the 2017 Seminar and Exhibits event. *See* Exhibit E at 2.

## COUNT I – BREACH OF CONTRACT – IMPROPER TERMINATION

45.     Expo Logic repeats and re-alleges paragraphs 1 through 44 above as if the same were set forth herein at length.

46. Under the Contract between ASIS and Expo Logic, ASIS is permitted to terminate the agreement only if "it reasonably becomes convinced that Expo Logic will not be able substantially to perform its obligations under this agreement."

47. Because there is no reasonable basis for ASIS to conclude that Expo Logic will be unable "substantially to perform its obligations" under the Contract through 2020, ASIS has no right to avail itself of the Contract's early termination provision and its unjustified attempt to do so is a breach of the Contract.

48. ASIS's misapplication of the early termination provision also constitutes a breach of the implied covenant of good faith and fair dealing inherent in every contract.

49. Had the Contract continued through completion, as it should, Expo Logic would have generated over $1 million in revenue from the remaining events covered by the Contract, including revenue from registration services, paid by ASIS, and revenue from lead retrieval services, paid by exhibitors.

50. ASIS's breach of contract will thus result in significant damages to Expo Logic.

## COUNT II – BREACH OF CONTRACT – FAILURE TO PAY INVOICE

51. Expo Logic repeats and re-alleges paragraphs 1 through 50 above as if the same were set forth herein at length.

52. Under the Contract, ASIS is obligated to pay its outstanding balance on Expo Logic's services within 30 days of the close of an event for which Expo Logic provided services. *See* Exhibit A at 6.

53. Expo Logic performed all of its obligations under the Contract in connection with ASIS's 2017 Seminar and Exhibits.

54.     After the conclusion of ASIS's 2017 Seminar and Exhibits in September 2017, Expo Logic issued a final invoice to ASIS on November 2, 2017 for the services it provided in connection with the 2017 event. A true and correct copy of the invoice is appended to the Complaint as Exhibit F.

55.     According to the invoice, payment in the amount of $66,733.36 was due on November 17, 2017.

56.     As counsel for ASIS stated in his November 13 letter, ASIS refuses to pay this invoice.

57.     ASIS has not made any payment towards the invoice and, accordingly, is in further breach of the Contract.

58.     ASIS's failure to pay the invoice has resulted in damages to Expo Logic.

**COUNT III – UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

59.     Expo Logic repeats and re-alleges paragraphs 1 through 58 above as if the same were set forth herein at length.

60.     Expo Logic's November 2, 2017 invoice includes line-item charges for registration services it provided at ASIS's 2017 Seminar and Exhibits, as well as for costs and fees associated with the custom digital platform Expo Logic created for ASIS. The registration services and digital platform fees are separate line items on the invoice.

61.     By providing these registration services and creating the custom digital platform, Expo Logic has conferred a benefit on ASIS.

62.     ASIS appreciated these benefits at its 2017 Seminar and Exhibits, where it and its exhibitors availed themselves of Expo Logic's registration services.

63.    The 2017 Seminar and Exhibits was a success in large part because of Expo Logic's services.

64.    ASIS has not made any payments towards the November 2, 2017 invoice and, accordingly, has not made any payments towards the registration and digital platform fees included in the invoice.

65.    It would be unjust and inequitable for ASIS to accept and retain the benefits of Expo Logic's registration services and digital platform without paying for them.

66.    To the extent the Contract does not entitle Expo Logic to payment on the November 2, 2017 invoice, Expo Logic should be entitled to the $66,733.36 due and owing under the invoice as a matter of equity.

**WHEREFORE**, Plaintiff Expo Logic respectfully requests judgment in its favor and against Defendant ASIS, including compensatory damages, consequential damages, attorneys' fees, costs, interest, and any other relief the Court deems necessary and proper.

Respectfully Submitted,

**BLANK ROME LLP**

Dated:  December 20, 2017

Jason A. Snyderman
Identification No. 80239
Ethan M. Simon
Identification No. 318633
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.:  (215) 569-5358
Fax:  (215) 832-5358
Snyderman@blankrome.com

*Attorney for Plaintiff,*
*World Wide Registration Systems, Inc.*
*d/b/a Expo Logic*

11

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

**BLANK ROME LLP**

Dated:  December 20, 2017

Jason A. Snyderman
Identification No. 80239
Ethan M. Simon
Identification No. 318633
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel.:  (215) 569-5358
Fax:  (215) 832-5358
Snyderman@blankrome.com

*Attorney for Plaintiff,*
*World Wide Registration Systems, Inc.*
*d/b/a Expo Logic*